CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

SEPT 16, 2024

LAURA A. AUSTIN, CLERK
BY:
    s/B. McAbee
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| CITY OF MARTINSVILLE, VIRGINIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.  4:24-cv-00002 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| PURDUE PHARMA, L.P., *et al.*, | ) | Chief United States District Judge |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This case, in which the City of Martinsville (City) asserts claims related to the opioid epidemic against a large number of defendants, was originally filed in the Martinsville City Circuit Court in 2018.  It was first removed to this court in December 2018, along with a group of other similar cases brought by Virginia cities and localities, and assigned Case No. 4:18-cv-72. This court denied the motion to remand as to the similar cases, but it remanded this case because of a procedural issue governing removal.  *City of Martinsville v. Purdue Pharma, L.P.*, No. 4:18-cv-72, ECF No. 78, Mem. Op. & Order (W.D. Va. Feb. 14, 2019) (explaining that because one of the served defendants in the case objected to removal, the case was removed only on Class Action Fairness Act (CAFA) grounds and not federal-question jurisdiction like the other cases, and determining that removal was improper under CAFA).

After remand, the case proceeded in state court for years, including a period of time when the case was stayed pending decisions of the federal multi-district litigation, *In re: National Prescription Opiate Litigation*, MDL No. 2804 (the Opiate MDL).  The defendants have been winnowed down considerably, leaving only a "handful of defendants."  (Notice of Removal ¶ 5, Dkt. No. 1; *see also* Mot. Remand 1 n.1, Dkt. No. 10 (describing the diminished number of defendants).)  On January 17, 2024, defendants Express Scripts, Inc. and OptumRX, Inc. filed a

joint notice of removal, invoking the federal officer removal statute, 28 U.S.C. § 1442(a)(1). (Dkt. No. 1.)

Shortly thereafter the City filed a motion to remand (Dkt. No. 10), which is fully briefed, was argued before the court, and is ripe for disposition.  In addition to the briefing and argument, the court also has reviewed the supplemental notices of authorities filed by the parties, citing to cases decided after briefing and the hearing.  (Dkt. Nos. 50–52; *see infra* note 7.)  For the reasons set forth herein, the court will grant the motion to remand.  The court will deny defendants' request for a stay pending appeal, but it will grant a 30-day stay pursuant to Federal Rule of Civil Procedure 62(a).  The court also will deny the City's request for costs and fees.

## I.  OVERVIEW

The City has sued various entities to "recover damages and costs it has incurred as a result of the prescription drug abuse problem in Martinsville."  (Compl. ¶ 20.)  The original defendants to the case included opioid manufacturers, distributors, retail pharmacies, and entities like Express Scripts and OptumRx, both of which are Pharmacy Benefit Managers (PBMs).  The court refers to these two collectively as defendants or PBMs.

PBMs "provide services to sponsors of health insurance plans that offer prescription-drug benefits," helping their clients "manage prescription-drug benefits."  (Notice of Removal ¶ 2.) These clients include employers, government entities, and unions.  "Express Scripts' clients include the U.S. Department of Defense [DOD] and health plans participating in the Federal Employees Health Benefits Program.  Optum Rx's clients include the Veterans Health Administration."  (*Id.*)

As noted, the PBMs contend that removal is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).  The City does not contest that removal on that ground could be proper based on the allegations in the complaint, but it contends that there are several procedural

barriers to removal in this case.  (*See generally* Mot. to Remand & Mem. of Law, Dkt. No. 10; Reply, Dkt. No. 41.)  First, it argues that the removal was untimely.  (Mot. to Remand 8–10; Reply 2–5.)  Second, it contends that a joint stipulation between the parties and entered as an order by the state court judge, which essentially stipulated that federal plans are not part of this case, both makes removal improper and constituted a waiver of the PBMs' right to remove.[1] (Mot. to Remand 10–13; Reply at 8–9.)

The court first provides a brief timeline of the relevant events, discusses the most relevant documents, and touches on the supplemental briefing in the case.  It then explains why it concludes both that removal was untimely and that the PBMs' conduct in the state court case, including agreeing to and asking for the Stipulated Order, constituted a waiver of their right to remove.  Because either one of these grounds alone is sufficient to order remand, the court does not reach the issue of whether the Stipulation Order itself renders the case non-removable under § 1442(a)(1).

## A.  Key Facts and Dates Relevant to the Remand Motion

The following facts and dates are relevant to the remand motion:

- July 2023 – The City served written discovery requests which requested information about the PBMs' work for their federal health-plan clients.  (*See, e.g.*, Req. for Produc. of Docs. Nos. 1, 2, Dkt. No. 1-8, at 335.)

- August 1, 2023 – Referencing the discovery requests, the PBMs sent the City a letter stating that the discovery requests "show[ed] for the first time that" there was grounds for removal and twice stated they would remove the case unless the City agreed to enter a stipulation materially like the stipulation entered in the *Jefferson County* case, a

---

[1]  The City also accuses the PBMs of gamesmanship and argues that they sought removal to avoid a February 6, 2024 hearing set to address both the PBMs' demurrers and the City's motion to compel.  The PBMs deny any such motive.  In support, they point out that they were the parties who scheduled the hearing for that date on their demurrers one month before it "became clear" to them that the case was removable, and they note that the City's later noticing of the motion to compel for the same day is "irrelevant."  (Opp'n to Mot. to Remand 9, Dkt. No. 40.)  The court makes no finding as to the City's accusation, and its decision does not rely in any way on any alleged bad faith by the PBMs or their counsel in the timing of the removal.

case in which the City's attorney also represents the plaintiff.[2]  (Ex. A to Mot. to Remand, Dkt. No. 10-1.)

- August 15, 2023 – The state court entered the parties' negotiated and agreed-upon stipulation as an order, in which the City agreed not to take certain positions or pursue certain arguments related to any federal plans. (Stipulation Order, Dkt. No. 1-10, also part of the state court record at Dkt. No. 1-8, at 259–61.)

- November 2023 – The plaintiff in the *Jefferson County* case served expert reports that expressly relied on the PBMs' work for federal health plans as purported evidence to prove the plaintiff's case.

- December 1, 2023 – In *Jefferson County*, the PBMs removed the case to federal court, invoking the federal officer removal statute.

- December 14, 2023 – In *Jefferson County*, plaintiff's counsel took the position in an email that the stipulation there did not preclude the plaintiff from using data from federal claims as evidence of the data the PBMs had, which informed its knowledge.

- December 21, 2023 – PBMs in this case asked the City, via email, whether it "is taking the position as expressed in [the December 14 email in *Jefferson County*], that Plaintiff may rely on analyses of federal claims as evidence in support of its claims, despite the Joint Stipulation."  The same email said that, without a response by January 5, 2024, the PBMs would assume the City's position in this case was the same as Jefferson County's.

- January 5 & 9, 2024 – The City's attorney sent emails which, according to the PBMs, "unambiguously" confirmed for the first time that the City is using work performed by the PBMs for federal officials as evidence to prove their case.[3]

- January 17, 2024 – PBMs filed their notice of removal.

---

[2]  After the hearing in this case, the federal court in *Jefferson County* remanded the case before it to state court.  *See Jefferson Cnty. v. Williams*, No. 4:23-cv-1539-MTS, 2024 WL 1014063 (E.D. Mo. Mar. 8, 2024).  The court reasoned that the PBMs there had notice of removability based on discovery responses served on them in February 2022.  Subsequent to that date, the parties entered into several stipulations and the court entered a joint stipulation in which the parties agreed that the plaintiff was "not challenging federal prescription PBM claims."  *Id.* at *4.  The court there concluded that, even though the discovery was withdrawn, and the stipulation indicated a withdrawal of federally related prescription claims, the 30-day period for removing had passed.  *Id.* at *3–4.  Thus, when the plaintiff submitted expert reports more than a year later relying on federal prescription plans, that did not trigger a new right to remove.  *Id.*

[3]  These emails are discussed in more detail *infra* Section I-B.

**B.  The Letter Leading to the Stipulation Order, the Order, and the January 2024 Emails[4]**

Because they figure so prominently in the parties' arguments, the court also will discuss the Stipulation Order, the original letter that requested its entry, and the emails between the parties just prior to removal.

The August 1, 2023 letter from counsel for the PBMs refers to the Requests for Production propounded to Express Scripts and OptumRx on July 10 and July 20, respectively. (Ex. A to Mot. to Remand.)  It states that those requests "show for the first time that Plaintiff will attempt to establish liability and seek recovery against the PBM Defendants based on federal prescription claims adjudicated or processed by the PBM Defendants.  Given that fact, the PBM Defendants are entitled to remove this case to federal court."  *Id.*  In two other places in the same letter (the opening and closing paragraphs), counsel states that if the City does not inform the PBM in writing that it will agree to enter into the attached stipulation, "the PBM Defendants will remove [or intend to remove] this case to federal court."  *Id.*  In response to that letter, the parties agreed upon and submitted for entry by the court a joint stipulation.

The court entered the stipulation as an order.  (Dkt. No. 1-10.)  This Stipulation Order includes as background (in "WHEREAS . . ." clauses) some of the same language from the August 1, 2023 letter.  It references the discovery requests and defendants' intention to remove absent entry of the stipulation.  (Stipulation Order 1, Dkt. No. 1-10, at 2.)  The Stipulation Order goes on to include various broad statements about what the City agrees not to do, which include that the City will not "take the position or pursue any argument suggesting that . . . the PBM

---

[4]  The City provided to the court at the hearing copies of the January 2024 emails.  Although it was represented to the court that the emails were in the record, no party has directed the court's attention to the precise location where, in the more than 4,000 pages of the state court record, those precise documents are located.  (*See generally* Dkt. Nos. 1-1 to 1-11.)  In any event, the PBM defendants did not dispute their authenticity and all parties appear to agree that the documents provided by the City are the actual documents.  Thus, the court has considered them.

Defendants' activities related to the Federal Plans caused, contributed to, exacerbated, or failed to sufficiently mitigate the opioid crisis.  Plaintiff will also never seek to impose liability of any kind on the PBM Defendants relating to the Federal Plans in this state court litigation."  (*Id.* ¶ 2.)

Then, after receiving the expert analyses in the *Jefferson County* case, and after the PBMs in that case removed to federal court, the plaintiff's counsel there (also representing the City of Martinsville) took the position that a similar stipulation in *Jefferson County* did not preclude the inclusion of federal claim analyses in its evidence because that information was "relevant to [the PBMs'] overall knowledge as to the choices it was making with regard to formulary and [utilization management] offerings."  (Notice of Removal ¶ 35 (quoting 12/14/23 letter from Jefferson County's counsel).)

In response to this position taken in the *Jefferson County* case, a series of email communications ensued in this case.  The Notice of Removal describes that January correspondence as follows:

> 36.   Because Jefferson County's counsel also represents the City in this case, and because the stipulation Jefferson County executed is materially similar to the stipulation the City executed in this case, the PBMs sent the City's counsel a letter on December 21, 2023, asking the City to confirm by January 5, 2024, whether the City "is taking the position as expressed in [Jefferson County's] correspondence dated December 14, 2023, that Plaintiff may rely on analyses of federal claims as evidence in support of its claims, despite the Joint Stipulation." The PBMs further stated that "[i]f we do not receive a response from you by January 5, 2024, we will take Plaintiff's position in this case to be the same as that expressed in your December 14, 2023, correspondence in the Jefferson County litigation."

> 37.   The City responded on January 5, 2024, stating that it was "in compliance" with the August 15, 2023[ ] stipulation; it had "no intention to use federal claims data to establish the PBM Defendants' liability relating to federal plans"; and that any "concern regarding compliance" with the stipulation should be

directed to the Virginia state court.[5]

38.   The PBMs responded on January 8, 2024, stating that the PBMs understood the City's January 5 communication to be taking the same position as plaintiff's counsel outlined in Jefferson County's December 14 email—namely, that even if the City will not use the PBMs' work for federal plans "to establish the PBM Defendants' liability relating to federal plans[,]" the City nonetheless does intend to use the PBMs' work for federal plans "as further evidence" that is "relevant to [the PBMs'] overall knowledge as to the choices [they were] making with regard to formulary and UM offerings."

39.   On January 9, 2024, the City responded, stating that it "stand[s] by [its] reply of January 5, 2024 . . . ."  The City did not disagree in any way with the statement that "the City intends in this case to use the PBMs' federal plan clients and federal claims data as 'further evidence' for the City's claims and 'relevant to your client's overall knowledge as to the choices it was making with regard to formulary and UM offerings.'"[6]

(Notice of Removal ¶¶ 36–39.)

## C.  Parties' Notices of Supplemental Authority

In addition to considering the briefing and the parties' argument at the hearing, the court also has reviewed the three "notices" filed by the parties in August 2024.  It discusses them briefly here.  The first notice (Dkt. No. 50), filed by the PBMs, cites to the Ninth Circuit's decision in *California v. CaremarkPCS Health, LLC*, No. 23-55597, 2024 WL 3770326 (9th Cir. Aug. 13, 2024), which reversed a district court decision relied upon by the City here, *People of the State of California v. Eli Lilly & Co.* (*Eli Lilly*), No. 2:23-cv-01929-SPG-SK, 2023 WL 4269750 (C.D. Cal. June 28, 2023).  But the issue there—and the one for which the City relies on *Eli Lilly* here—was whether a disclaimer in a complaint was sufficient to render the case non-

---

[5]  The City's January 5 response stated that if defendants had "some concern regarding compliance with the operative Stipulation and Order, such should be addressed to the presiding court (as opposed), for example, to such concern serving as the basis of a frivolous removal."

[6]  Although it was not included in the Notice of Removal, the City's January 9 response also stated that counsel's "non-reply to any future emails from you on this or related subjects should never be construed as consent."

removable.  Because the court is not reaching the issue of whether the Stipulation Order alone renders the case non-removable, the Ninth Circuit's ruling has no bearing on this court's rationale for remanding.

In its own "Notice of Supplemental Authority," and "Opposition" to defendants' notice (Dkt. No. 51), the City explained its position regarding the applicability of *CaremarkPCS Health* to the facts here, and it also cited to five district court decisions from other districts in which district courts remanded cases.

In the final filing (Dkt. No. 52), the PBMs contend that the court should not consider any of the additional five cases because the City did not timely submit them.  They note that these cases were all decided months before the City alerted the court to their existence.  The PBMs nonetheless go on to argue why those cases are inapplicable and distinguishable from this case. Although the City did not promptly submit this authority after it was issued, there is no set deadline for doing so, and the court has reviewed those cases.  As the PBMs point out and the court recognizes, though, all five district court cases have been appealed, and none is binding on this court, so the court does not rely on them heavily in reaching its decision.  Moreover, three of the five cases—like the *CaremarkPCS Health* decision—have little, if any, bearing on the reasons that the court is remanding this case (timeliness and waiver), and the court need not discuss them further.  (*See* City's Notice of Supp. Auth. ¶¶ 1, 4, 5 (describing these three cases); *id.* at Exs. A, D, E (copies of cases).)  The remaining two relate to the issue of timeliness.  The first is *Jefferson County. v. Williams*, No. 4:23-cv-1539-MTS, 2024 WL 1014063 (E.D. Mo. Mar. 8, 2024), *appeal docketed*, No. 24-1550 (8th Cir. Mar. 15, 2024), of which the court was aware based on its own research; the second is *Vermont v. 3M Co.*, No. 2:24-CV19, 2024 WL 1596887 (D. Vt. Apr. 12, 2024), *appeal docketed*, No. 24-1250 (2d Cir. May 9, 2024).  The court discusses the first and cites the second *infra* at Section II-C-2.

## II.  DISCUSSION

### A.  Federal Officer Removal

Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1),

> private actors can remove a case to federal court when they show
> that they: (1) acted under the direction of a federal officer; (2)
> possess a colorable federal defense; and (3) engaged in government-
> directed conduct that was causally related to the plaintiff's claims.
> *See Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir.
> 2017).

*Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 247 (4th Cir. 2021)

("*Arlington County*").  There is a "liberal policy in favor of federal officer removal."  *Id.* at 250

(citation omitted).  Thus, while the removing party bears the burden of establishing jurisdiction,

"the federal officer removal statute must be 'liberally construed'" and "the ordinary

'presumption against removal' does not apply."  *Id.*  (citations omitted).

*Arlington County* is instructive as to how the statute should be applied to facts like those

alleged in the complaint because it also was a case brought by a locality in Virginia suing opioid

manufacturers, distributors, and pharmacies for the public nuisance of the opioid epidemic.  The

removing defendants in that case included subsidiaries of Express Scripts, Inc., who were the

mail-order pharmacies with whom Express Scripts, Inc. contracted to provide mail-order

pharmacy benefits.[7]  The district court granted a motion to remand, but the Fourth Circuit

reversed, reasoning that the defendants satisfied all three of the requirements of the federal

officer removal statute.

As to the first, the court discussed in detail the relationship between the mail-order

pharmacies and the DOD, and it concluded that the removing defendants were acting under a

---

[7] Express Scripts, Inc. also was a defendant there, and it had previously removed on other grounds and the case had been remanded.  Only its affiliates filed the second notice of removal asserting federal officer removal.

federal officer, even absent a direct contractual relationship with the DOD.  *Id.* at 251–54.  As to

the second—that the removing defendants have a "colorable federal defense"—the court first

noted that the defense "must only be plausible."  *Id.* at 254.  It ultimately concluded that both

defenses the removing defendants raised—the "federal contractor defense" and preemption—

were plausible.  *Id.* at 255–56.  As to the third requirement—that defendants' government-

directed conduct be "related to" the plaintiff's claims—it was sufficient that the plaintiff was

using information about the federal work to support its claims (even if the plaintiff was not

seeking to impose liability based on the work for the federal plans directly).  *Id.* at 256–57.

The PBMs argue that the reasoning in *Arlington County* controls the outcome here and

clearly renders this case removable.  In response, the City does not argue that *Arlington County*

is distinguishable in terms of substance.  (Indeed, one of the City's arguments is that, consistent

with *Arlington County*, the case was removable on federal officer grounds when it was first

filed.)  Instead, the City's focus is on what it says are procedural barriers to removal, *i.e.*, that

removal was not timely and that the PBMs waived their right to remove, as well as on the

Stipulation Order's impact on removability.  Specifically, because the City has agreed—and the

state court has ordered—that, among other restrictions, the City will not "seek to impose liability

of any kind on the PBM Defendants relating to [federal plans] in this state court litigation,"

(Stipulation Order ¶ 2, Dkt. No. 1-10), the City contends that there is no basis for federal officer

removal.

## B.  Deadlines for Removal

Also relevant are the deadlines for removal, and two provisions of 28 U.S.C. § 1446 are

potentially applicable.  First, subsection (b)(1) states:

> The notice of removal of a civil action or proceeding shall be filed
> within 30 days after the receipt by the defendant, through service or
> otherwise, of a copy of the initial pleading setting forth the claim for

> relief upon which such action or proceeding is based, or within 30
> days after the service of summons upon the defendant if such initial
> pleading has then been filed in court and is not required to be served
> on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1).

A second potentially applicable subsection is subsection (b)(3), which states, in relevant

part:

> [I]f the case stated by the initial pleading is not removable, a notice
> of removal may be filed within thirty days after receipt by the
> defendant, through service or otherwise, of a copy of an amended
> pleading, motion, order[,] or other paper from which it may first be
> ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3).  In the Fourth Circuit, the phrase "motion, order, or other paper" is

interpreted "broadly to include 'any information received by the defendant, whether

communicated in a formal or informal manner.'"  *Northrop Grumman Tech. Servs. v. DynCorp

Int'l LLC*, 865 F.3d 181, 186–87 (4th Cir. 2017) (citation omitted).

**C.  The PBMs Did Not Timely Remove.**

    **1.  It is a close question whether the PBMs could have properly removed the
        complaint when it was first filed under the federal officer removal statute.**

The City first argues that the PBMs were required to remove based on the original

complaint because they knew, as of the filing of the complaint, that the case was removable.  For

support, the City argues first that paragraph 90 of the PBMs' notice of removal, which cites to a

portion of the complaint that refers to "public plans," (Compl. ¶ 503), shows that the complaint

made apparent the federal officer grounds for removal.  Second, the City relies on *Arlington

County* to contend that the complaint here, similar to the complaint there and as the Fourth

Circuit there held, was removable under the federal officer removal statute when filed.

As to the City's first argument, the PBMs' Notice of Removal is interpreting the

complaint years down the road, after multiple other developments in the case, and with the

benefit of hindsight.  Thus, the PBMs' interpretation of the complaint *now* does not mean the grounds for removal were readily apparent at the time of filing of the complaint.

Instead, the court looks to the plain language of the complaint to make this determination. In its entirety, paragraph 503 of the Complaint, to which the Notice of Removal refers, states:

> 503.  The conspiracy would not have succeeded absent the PBM's control of the flow of opioids from manufacturer to the end user. The PBM's plan design, including formulary placement, controlled which opioids were paid for, reimbursed, and covered ***by public and private pharmacy benefit plans***. The PBMs exacerbated the opioid crisis by (a) intentionally designing benefit plans that would maximize the number of opioids in the marketplace, (b) failing to manage and/or monitor these plans to minimize the use and abuse of opioids, and (c) choosing drugs to put on their formularies that provided the largest profit to themselves, regardless of the addictive quality of the drug and whether there was an alternative available and limiting access to competing less-additive alternatives.

(Compl. at 122, Dkt. No. 1-1, at 125 (emphasis added).)  In the court's view, nothing about the language of the foregoing paragraph makes clear that any federal plans were included.  The paragraph simply references "*public* and private pharmacy benefit plans."  (*Id.*)

At the hearing, however, the City's counsel also argued that the 2021 *Arlington County* decision compels the conclusion that the original complaint here was removable on federal officer grounds.  (Hr'g Tr. 7–8, Dkt. No. 49.)  The court agrees with the City that *Arlington County* did not require a reference to "federal plans" because the allegations there were so broad that they "necessarily included federal plans."  (*See id.* at 8 (City's counsel so arguing)).  In *Arlington County*, the County argued there was no nexus between its claims as pled and the defendants' government-directed conduct.  996 F.3d at 256.  The County pointed out that its amended complaint did not mention the distribution of opioids to veterans, the DOD contract, or other federally related duties, but the court rejected that argument as "elevat[ing] form over substance."  *Id* at 257.  The court noted that the complaint sought damages from harm arising

12

from "every opioid prescription" filled by defendants and alleged that defendants "did nothing to stem the flow of excess opioids into Arlington County." *Id.* Because the defendants were required to fill those prescriptions to comply with their duties under the DOD contract and had no ability to modify that contract, the nexus was satisfied. *Id.*

Whether or not the complaint as filed here was removable is a challenging issue. Based on the reasoning of *Arlington County*, the complaint here likely was removable on federal officer grounds at the time it was filed. Indeed, the portions of the complaint that the Fourth Circuit cited to as establishing the required causal connection are very similar to phrases and wording in the complaint here.[8] And, as the Fourth Circuit made clear, requiring specific reference to the federal clients or to federal plans before a case would be removable would elevate "form over substance." *See Arlington County*, 996 F.3d at 257.

On the other hand, the PBMs did not have the benefit of the 2021 *Arlington County* decision at the time the state court complaint here was filed in 2018. And, as the PBMs point out, several federal district courts in Virginia have held that the duty to remove is not triggered unless it is "unequivocally clear and certain" that there is a valid basis for removal. *E.g.*, *US Airways, Inc. v. PMA Capital Ins. Co.*, 340 F. Supp. 2d 699, 703–04 (E.D. Va. 2004) (citing to decisions from the Fifth and Tenth Circuits).[9] Assuming that is the standard in the Fourth

---

[8] *Compare Arlington County*, 996 F.3d at 257 (relying for the third requirement on statements in the complaint that plaintiff sought damages from "every opioid prescription" filled by the pharmacies pursuant to their "formularies" and that the defendants "did nothing to stem the flow of excess opioids into Arlington County" *with* Compl. ¶¶ 18, 371 (alleging the PBMs' fingerprints are on "nearly every opioid prescription filled"); ¶ 359 (alleging that the "PBMs are still not doing all they (easily) can to halt the improper dispensing of opioids . . ."); ¶ 433 (alleging the PMBs "created their formularies to ensure that an excessive number of pills were made available to users for use and abuse").

[9] The Fourth Circuit itself does not appear to have adopted this standard. The only published decision from the appellate court utilizing that language refers to the requirement that a *waiver* of the right to remove must be "unequivocally clear and certain." *Northrop Grumman Tech. Servs.*, 865 F.3d at 186–87 (citation omitted). *But see Mullinex v. Air & Liquid Sys. Corp.*, No. 4:18cv33, 2019 WL 774927, at *1 (E.D. Va. Feb. 20, 2019) (affirming use of standard by U.S. Magistrate Judge based on the *US Airways* case and because the objecting party failed "to present any binding precedent that forbids" applying that standard).

Circuit, the court believes it is questionable whether the complaint here satisfied that standard.

Defendants also argue that the *Arlington County* decision itself cannot be the "other paper" that triggers removal and rely, in part, on an Eastern District of Virginia decision: *Mullinex v. Air & Liquid Sys. Corp.*, No. 4:18cv33, 2018 WL 7170120, at *16 (E.D. Va. Dec. 6, 2018) (memorandum and recommendation), *adopted*, 2019 WL 774927, at *1 (E.D. Va. Feb. 20, 2019). *Mullinex* specifically states that decisions in other cases—and even related similar cases—do not trigger removal because they are not an "other paper" received by the removing party. 2018 WL 7170120, at *6 n.6. *But see Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263, 267 (5th Cir. 2001) (concluding that under Third Circuit precedent, a decision "in an unrelated case, but which involves the same defendant, a similar factual situation, and the question of removal" can constitute as an "order" under § 1446(b)).

Although the court has carefully considered all the arguments regarding whether the complaint itself triggered a duty to remove, it ultimately concludes that it need not reach a conclusion on this issue or any of its sub-parts. Because the court concludes that the notice of removal is not timely on other grounds, remand is appropriate regardless of whether the complaint was removable when filed.

## 2. The PBMs, by their own admission, knew that the case was removable as of August 1, 2023, based on the discovery requests served on them. They failed to remove within thirty days of their receipt of that discovery.[10]

As to whether there was some "other paper" triggering the 30-day period, the court finds the August 1, 2023 letter from the PBMs' counsel to the City's counsel highly relevant. As discussed, that letter pointed to some of the City's discovery requests and stated that those

---

[10] The PBMs contend that the City waived its argument that the discovery requests triggered removal by failing to raise it in its opening brief. The City disputes this, pointing to page 5 of its opening brief and its argument generally. Regardless, the issue was raised in the reply brief, and counsel for the PBMs declined an opportunity to brief the issue further. (Hr'g Tr. 37–38.) The court will exercise its discretion and consider that argument.

requests "show for the first time that Plaintiff will attempt to establish liability and seek recovery against the PBM Defendants based on federal prescription claims adjudicated or processed by the PBM Defendants."  As a result, it continued, "the PBM Defendants are entitled to remove this case to federal court."  (Ex. A to Mot. to Remand.)  The letter then threatened that if plaintiff refused to enter the stipulation attached to the letter, then "the PBM Defendants will remove this case to federal court."  (*Id.*)

The PBMs correctly note that the August 1, 2023 letter could not start the 30-day removal clock, because it was not "a paper" received by the PBMs; it was one *sent by* them.  Nonetheless, the content of the August 1, 2023 letter makes clear that the PBMs believed the City was attempting to assert liability based on federal plans, and the PBMs therefore sought a stipulation on that issue.  Put differently, by stating that they were entitled to remove and referencing the discovery requests, the PBMs essentially acknowledged that the discovery requests informed them of their entitlement to removal.  (*See* Discovery Requests to Express Scripts, Dkt. No. 1-8, at 328–41.)

There are a broad range of documents that can satisfy the "other paper" requirement, and the determination is necessarily case-specific.  *Cf. Northrop Grumman Tech. Servs.*, 865 F.3d at 186–87.  Quoting from *Lovern v. Gen. Motors Corp.*, 121 F.3d 160 (4th Cir. 1997), the *Mullinex* Report & Recommendation emphasized that a determination of when a defendant could reasonably ascertain a case was removable should be determined based on an *objective* analysis of the papers exchanged.  This would prevent courts from having "to inquire into the subjective knowledge of the defendant," or end up with "a mini-trial regarding who knew what and when." 2018 WL 8180120, at *16 (quoting *Lovern*, 121 F.3d at 162).  *Lovern* continued, therefore, that the grounds should "be apparent within the four corners" of the "other paper."  121 F.3d at 162.

But while the language of *Lovern* instructs courts to look to the papers themselves,

numerous district courts have noted that *Lovern* involved a situation where the facts giving rise to removal were not known to the defendant.  Where defendants had actual knowledge of the facts supporting the basis for removal, however, that knowledge can trigger the 30-day removal clock.  *See Mai Dang v. Target Corp.*, No. TDC-14-2215, 2014 WL 6705375, at *4 (D. Md. Nov. 26, 2014) (collecting authority).  The same should be true of where a defendant has expressly stated that they knew the case was removable.  *Cf. id.*  And this is particularly true considering *Lovern*'s warning that courts should not allow "strategic delay interposed by a defendant in an effort to determine the state court's receptivity to his litigating position . . . ."  121 F.3d at 162. As another court noted, the 30-day period is designed to avoid a situation in which a "Defendant, once having identified the case as one removable to federal court, could retain the unfair advantage of being able to remove the case at will, enabling a Defendant to exercise his unilateral power of removal at a strategic juncture in the litigation."  *Link Telecommc'ns, Inc. v. Sapperstein*, 119 F. Supp. 2d 536, 541 (D. Md. 2000) (quoting *Hubbard v. Union Oil Co. of Cal.*, 601 F. Supp. 790, 795 (S.D.W. Va. 1985)).

Here, we have clear evidence that the PBMs knew the case was removable as least as of August 1, 2023, when they stated that they intended to remove based on the discovery requests. They cannot now argue that they did not know the case was removable to federal court as of August 1, because they clearly took the position that it was.  Moreover, they used that position to extract a stipulation from the City that was at least an attempt by the parties to negate the grounds for removal.  While counsel claimed at the hearing before this court that the August 1 letter was mere "puffery," that "puffery" was subject to potential sanctions under Virginia Code Ann. § 8.01-271.1 when it was placed in a proposed order the parties submitted to the court, which was subsequently entered.  Under the facts of this case, then, the court concludes that the "other paper" served on the PBMs were the discovery requests that led them to send the August

16

1, 2023 letter stating that they were entitled to remove.  Because the notice of removal was not filed until January 2024, the court finds removal untimely.[11]

The PBMs insist, relying on the magistrate judge's memorandum and recommendation in *Mullinex*, that discovery requests (which can ask for relevant information beyond the claims) do not make it "unequivocally clear and certain" that the case was removable.  2018 WL 7170120, at *16 .  The PBMs also point to *Zukor v. Inova Health Care Servs.*, 2000 U.S. Dist. LEXIS 21998, at *16–17 (E.D. Va. Feb. 23, 2000), for the proposition that "discovery requests almost never trigger removal, and the reason for that is that a discovery request itself [does not] change the case."  (Hr'g Tr. 38; *see also* Opp'n to Mot. Remand 16, Dkt. No. 40.)  While that argument has some initial appeal, the court must look to the facts of *this* case.  And as noted here, after receiving those requests, the PBMs asserted that it was essentially clear and certain that the claims triggered grounds for federal officer removal, and it extracted the stipulation from the City as a result.

Further, *Zukor* and *Mullinex* are both non-binding authority and distinguishable.  In *Mullinex,* the court explained that plaintiff's discovery responses (which the plaintiff claimed triggered the 30-day period of removal) "vacillated between different theories of how [defendant] failed to place warnings" and caused confusion by first "claim[ing] that the warnings

---

[11] Even if the right to remove was not triggered by the discovery requests, the court nonetheless rejects the PBMs' assertion that the January emails were the "other paper" triggering the right to remove.  *See supra* at Section I-B (describing emails).  In particular, information set forth in a separate case cannot be the basis for removal in *this* case, *see Mullinex*, 2018 WL 7170120, at *6 n.6 ("[A]llegations and experience in prior, unrelated cases do not suffice to clarify claims for removal purposes in this case.") (citations omitted).  So, the *Jefferson County* correspondence and communications did not trigger a right to remove in this case.  Moreover, the court does not find "on the four corners" of either of the January emails from the City's counsel any information showing that the case is removable.  Instead, the first email from the City states it intends to abide by the Stipulation Order; the second simply refers back to the first.  Neither of them clearly triggers a right to remove.  Further, as the City argues in its motion to remand, "the January 2024 emails were simply a mechanism created by the PBMs to import papers generated in *Jefferson County* into this case to be used as a basis for removal[,]" (Reply Br. 4), which is improper.  The court agrees with the City that "[a] defendant cannot simply manufacture a basis for removal by emailing self-serving questions" and declaring that a failure to respond will be taken as assent.  (Mot. Remand 9.)

did not require proof of conformity with military specifications, and then assert[ing] that [defendant] failed to provide warnings required by military specifications."  2018 WL 7170120, at *18–19.  It was not until a pretrial hearing that plaintiffs and the court made it "unequivocally clear and certain" that the federal contractor defense was available.  *Id.* at *19.

Likewise, in *Zukor*, the court relied on unpublished authority from an out-of-circuit district court, for its statement that a "discovery request usually will not" trigger removal.  2000 U.S. Dist. LEXIS 21998, at *16.  The court stated that if defendants had attempted to remove based on the specific requests at issue, that would have been "speculative" and "improper."  *Id.* at *17.

Here, by contrast, the PBMs' own letter reflects that they thought it unequivocally clear and certain—not speculative—that the defense was available based on the discovery responses. So clear, in fact, that they believed it necessary to obtain a stipulation order to ensure liability could not be related to the federal plans, in lieu of removing.  Thus, neither *Mullinex* nor *Zukor* compels a different result.

The *Jefferson County* court, which faced a nearly identical factual situation, reached a similar conclusion.  The court reasoned that the plaintiff's discovery responses, which referred to federal plans, qualified as an "other paper" for purposes of removal.  2024 WL 1014063, at *4; *see also State Farm Fire & Cas. Co. v. Valspar Corp.*, 824 F. Supp. 2d 923, 933 (D.S.D. 2010) (finding that "notice of removability under § 1446(b) may be provided by answers to discovery requests" and collecting authority for same); *Vermont v. 3M Co.*, No. 2:24-CV19, 2024 WL 1596887, at *4 (D. Vt. Apr. 12, 2024), *appeal docketed*, No. 24-1250 (2d Cir. May 9, 2024) (concluding that removal was untimely because it occurred more than thirty days after service of a paper that allowed the defendants "to ascertain removability when applying a 'reasonable amount of intelligence'") (citation omitted).

For all the reasons set forth above, the court concludes that the notice of removal was untimely.

**D. The PBMs Waived Their Right to Remove under the Federal Officer Removal Statute by Their Continued Participation in the State-Court Proceedings.**

As a separate and independent ground for remand, the court concludes that the PBMs waived any right to removal on federal officer grounds by entering into the stipulation, asking the state court to enter it (which the court did, as a Stipulation Order), and continuing to litigate in state court for about five months after August 1, 2023. Their conduct included asking for a hearing on their demurrers, as well.

A party waives the right to removal where it has notice of the right to remove but continues to litigate in state court, at least where it affirmatively asks the state court to take some action to dispose of the claims alleged. In *Wolfe v. Wal-Mart Corp.*, 133 F. Supp. 2d 889, 893 (N.D.W. Va. 2001), the court explained waiver in this context:

> [W]here a defendant has notice of the right to remove but continues to litigate in state court, prior to filing a notice of removal, the defendant will be considered to have waived its right to remove. *See Baldwin v. Perdue,* 451 F. Supp. 373 (E.D. Va. 1978) (holding that defendant's filing of cross-claim in state court prior to removing action constituted a waiver of the right to remove); *Sood v. Advanced Computer Techniques Corp.,* 308 F. Supp. 239 (E.D. Va. 1969) (finding that defendant waived right to remove by filing a voluntary counterclaim in state court).

> In *Jacko v. Thorn Americas, Inc.,* 121 F. Supp. 2d 574 (E.D. Tex. 2000), after the defendant filed a motion for summary judgment, the plaintiff amended her complaint to add a Title VII claim, following which a hearing on the summary judgment motion was held. The district court found that the defendant, by choosing to proceed with the summary judgment hearing, despite the obvious federal claim in the amended complaint, had affirmatively invoked the state court's jurisdiction and thereby waived its right to remove the action to federal court. 121 F. Supp. 2d at 577. The court held that "a defendant who seeks summary judgment in state court affirmatively invokes the state court's jurisdiction and demonstrates his clear intent to have the state court proceed on the merits of the case." 121

> F. Supp. 2d at 576. *See also Scholz v. RDV Sports, Inc.,* 821 F. Supp.
> 1469, 1470 (M.D. Fla. 1993) (finding that an action in state court
> seeking to dispose of the claims alleged, as opposed to preserving
> the status quo in state court, constitutes a waiver).

*Id.* at 893.

It is true, as the PBMs argue, that it is possible to file papers after a case becomes

removable and *not* have it constitute a waiver.  In *Abraham v. Cracker Barrel Old Country Store,*

*Inc.*, No. 3:11CV182-HEH, 2011 WL 1790168, at *6 (E.D. Va. May 9, 2011), for example, the

court found there was no waiver where a party knew of its right to remove, but filed a Motion to

Dismiss for Improper Venue, Answer, Grounds of Defense, and Prayer for Jury trial before filing

a Notice of Removal eight days later.  The court there found that there was not a "clear and

unequivocal intent to remain in state court."  *Id.* at *5.  In part, the court noted that the state court

rule required the filing of that motion by a certain deadline, and that the motion did not seek

dismissal of claims on their merits.  This was classified by the court as a "defensive action" and

"not a request for a final determination on the ultimate merits of the controversy."  *Id.* at *6.  But

the *Abraham* court also noted the "guiding rationale behind the doctrine of waiver," which it

described as "concern for preventing a removing defendant from 'test[ing] the water in state

court and, finding the temperature not to its liking, beat[ing]a swift retreat to federal court.'"  *Id.*

(citations omitted).

The parties devote a lot of their briefing on this issue to their respective views of the

applicability of *Northrup Grumman Tech. Servs.*, 865 F.3d 181.  There, the Fourth Circuit

remanded a case removed under the federal officer removal statute, both because of untimely

removal and the defendants' waiver.  The court explained:

> Both the 30-day removal deadline and the waiver doctrine require
> that a party defending claims filed against it make a timely choice,
> either to defend the case in state court or to remove promptly to a
> federal forum. Because Northrop Grumman chose to defend the case

20

> in the state court far beyond the 30-day removal deadline, Northrop
> Grumman's request for removal was both untimely and waived by
> its litigation conduct in the state court.

*Id.* at 188.

The court agrees with the PBMs that *Northrup Grumman* is distinguishable in part. There, the defendant had not only engaged in discovery, but also had filed a motion for summary judgment. Here, by contrast, the PBMs filed their demurrers before the City's discovery requests were served and before it became clear that there were grounds for removal. So, *Northrup Grumman* seems more like cases where clear requests for relief on the merits were sought after the right to remove became clear.

Despite that difference, the court finds that the PBMs here took affirmative action to continue to litigate in state court. Specifically, the right to remove was clear at least as of August 1, 2023, by the PBMs' admission in their letter to the City's counsel and as the court has already discussed. Despite that, the PBMs entered into a stipulation that the parties asked the court to enter, *and* they continued to engage in discovery with the City. Although they had filed their demurrers *prior* to August 1, 2023, they also asked for a hearing on their demurrers before removal. In short, their overall conduct indicated an intent to stay in state court, and they participated in the case there for months. Essentially, the PBMs decided that, to their satisfaction, the Stipulation Order would ensure the case would not veer into territory that could lead to removal. By asking the court to enter that stipulation as an order and by continuing to litigate, they evinced an intent to remain in state court. That they now regret that decision does

not make the case once again removable.[12]

Put differently, the fact that the PBMs now believe the City's conduct or its planned use of certain data in support of its claims violates the Stipulation Order does not render the case removable once again.  Instead, their remedy is to challenge that conduct in state court and to argue before the state court that the Stipulation Order would be violated by allowing use of the data related to federal plans.[13]

For the foregoing reasons, the court finds that the PBMs waived their right to remove by continuing to participate in the state-court proceedings.  Thus, remand is proper on that ground, as well.[14]

### E.  The Court Will Not Stay Its Remand Order Pending Appeal.

As noted in *Arlington County*, orders to remand to state court generally are not appealable, but the federal officer removal statute contains an exception allowing an appeal where a case has been removed under that statute and then remanded. 996 F.3d at 250–51.  The PBMs have asked the court to stay its remand order pending appeal, and the City opposes any stay.

The court has carefully considered the parties' arguments on this issue, (*see* Opp'n 16–

---

[12]  As noted at the outset of this opinion, absent the stipulation order and any procedural defects like timeliness and waiver, this case almost certainly would be removable, based on the reasoning and outcome in *Arlington County*.  The City argues, though, that the case is not removable because the Stipulation Order ensures that the federal officer defense is not available.  Because the court has concluded both that the removal was not timely and that the PBMs waived their right to remove, it need not consider whether the stipulation alone renders this case non-removable.

[13]  Of course, the court expresses no opinion on whether use of that data, such as the use proposed by the plaintiff in the *Jefferson County* case, would violate the Stipulation Order.

[14]  The court acknowledges the parties' finger-pointing about misconduct or potential misconduct.  But the court's ruling will not give license or encourage parties to enter into binding stipulations and then break them, simply to avoid removal.  Indeed, any party who chooses that course does so at its own peril.  A state court judge, including the able state court judge assigned to this case, is certainly capable of policing the conduct of attorneys and parties before him and of enforcing his own orders and parties' binding stipulations.

17; Reply 9–12), and it concludes that a stay is not appropriate here.  The court first sets forth the appropriate standard to apply, another issue on which the parties' views diverge.

For their part, the PBMs argue that the Supreme Court's decision in *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), compels this court to stay the remand order pending appeal.  In *Coinbase*, the Supreme Court concluded that where an interlocutory appeal was taken from an order denying a motion to compel arbitration, a district court was required to stay its proceedings pending the outcome of the appeal.  In so ruling, the Court relied on the so-called *Griggs* rule,[15] which explains that a district court loses jurisdiction over the matters at issue in an appeal, including an interlocutory appeal.  599 U.S. at 740–41.  It noted that because the statute allowing an interlocutory appeal from a decision on arbitrability does *not* contain a provision making a stay discretionary, *see* 9 U.S.C. § 16(a), the *Griggs* rule applied and meant that the district court was required to stay its order pending the outcome of the appeal.  *Id.* at 747.

Noting the reasoning of *Coinbase*, the PBMs argue that absent a non-stay provision (or a provision making a stay discretionary), a stay is required here because of *Griggs*.  They also cite to two post-*Coinbase* cases where district courts stayed remand orders to preserve the right to appeal under the federal officer removal statute, although neither case cited to *Coinbase*.  (Opp'n 16–17 (citing *Ohio ex rel. Yost v. Ascent Health Servs., LLC*, No. 2:23-cv-1450, 2024 WL 218350, at *1 (S.D. Ohio Jan. 19, 2024) (stating that remanding effectively would deprive the defendants of their right to appeal); *Roberts v. Smith & Wesson Brands, Inc.*, No. L-22-cv-6169, 2023 WL 8701093, at *2 (N.D. Ill. Dec. 15, 2023) (calling the typical *Nken v. Holder* framework an "odd fit" for the case and stating that remanding the case while it was on appeal "would

---

[15]  *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982), held that "[a]n appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'"  *Coinbase*, 599 U.S. at 740 (quoting *Griggs*, 459 U.S. at 58).

undermine the statutory provision that authorizes appeals" for federal officer removal).

The parties did not cite to any cases applying *Coinbase* in the context of an appeal from a remand order.  And while the reasoning of *Coinbase* is seemingly broad enough to encompass this situation, *see Coinbase, Inc.*, 599 U.S. at 760 (Jackson, J, dissenting) (noting that "a wide array of appeals" that could potentially require mandatory stays based on the majority's reasoning), the majority opinion limited its holding to "only arbitration appeals under § 16(a)," *id.* (pointing to limiting language throughout the majority opinion).  In light of those express limitations, the court declines to read *Coinbase* as requiring a stay in this circumstance.  *Accord Att'y Gen. v. Dow Chem Co.*, No. 23-2449, 2024 WL 3361395, at *9 (D.N.J. July 9, 2024) (finding defendants' proposed interpretation that *Coinbase* applies to a remand order where removal was based on the federal officer removal statute "too expansive" and declining to adopt it "[a]bsent clear guidance from the Supreme Court or the Third Circuit").  Instead, the court will continue to apply the test that the Fourth Circuit generally applies in determining whether a stay should be granted.

Specifically, as set forth in *Nken v. Holder*, 556 U.S. 418 (2009), the standard for granting a stay pending appeal is similar to the standard for a preliminary injunction, requiring the court to consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  556 U.S. at 434.

As to the first factor, the PBMs have not made a strong showing that they are likely to succeed on the merits.  Indeed, the court already has concluded that it believes the PBMs are likely to lose on the merits of the remand issue (although it is perhaps a close issue), so that does not support a stay.

As to the second factor, the court cannot conclude that the PBMs will be irreparably damaged if the court does not stay its remand order.  Contrary to any argument that the PBMs could lose their right to appeal (an argument on which some of the cases cited by the PBMs rests), the *Arlington County* case itself makes clear, if the court implements the limited 30-day stay under Federal Rule of Civil Procedure 62(a), as it intends to do, that the PBMs will still have a right to appeal this court's remand order.  *Arlington County*, 996 F.3d at 250 (noting that court granted only a 30-day stay to allow appeal).  And of course, the PBMs may request a stay from the appellate court.  But even if it is not granted, it does not cut off the opportunity to appeal.

Furthermore, being required to continue litigating this case while also prosecuting an appeal is a common scenario when interlocutory appeals are at issue, and additional litigation expenses, even if "substantial and unrecoupable . . . [do] not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974).  Thus, the court does not find irreparable harm to the PBMs without a stay.

As to the third factor, the court believes there would be harm to the City if the court were to grant a stay.  In part because the state court stayed proceedings for a time, the City has now been waiting about six years for its case to proceed, and an appeal from this court's decision would delay that likely for at least another year.  Such additional delay in an already lengthy litigation process can raise concerns about a loss of memories or evidence.  *See City of Annapolis v. BP P.L.C.*, No. SAG-21-00772, 2022 WL 4548226, at *4 (D. Md. Sept. 29, 2022) (noting same factor in denying stay on appeal of remand order where removal was based on federal officer removal statute).  Moreover, immediately before the removal, the state court was poised to hear argument both on defendants' demurrers and on important discovery issues, so progress was being made in the case before removal.

Lastly, the PBMs have not identified any way in which the public interest would be

served by a stay.  Thus, this factor also cuts against staying the case pending appeal.

On balance, then, the court concludes that the PBMs have not established an entitlement to a stay of this court's remand decision pending appeal.  That request will be denied.

Although the court is denying a stay pending resolution of the appeal, the court will grant a temporary, 30-day stay of the execution of its remand order from the date of its entry to allow an appeal.  *See Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, No. 1:16CV534(JCC/IDD), 2016 WL 3180775, at *2 (E.D. Va. June 7, 2016) (concluding that Rule 62(a) applies to orders remanding cases removed from State court pursuant to the federal officer removal statute); Fed. R. Civ. P. 62(a) ("[E]xecution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the court orders otherwise.").

## F.    The Court Will Not Award Fees and Costs at This Time.

The City also has asked that the court award its fees and costs in litigating the removal and remand motion.  That request is contained in a single sentence at the conclusion of its motion, (Mot. to Remand at 13), although the PBMs respond to it in their opposition.  (Opp'n to Mot. Remand 22.)

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  The standard for awarding fees under this provision "should turn on the reasonableness of the removal."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  The Fourth Circuit has noted that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  *Common Cause v. Lewis*, 956 F.3d 246, 256 (4th Cir. 2020) (quoting *Martin*, 546 U.S. at 141).

Although the court has concluded that removal was improper, the court recognizes that there are close issues in this case.  In light of that, the court further concludes that the PBMs did

not lack an objectively reasonable basis for seeking removal. *See Common Cause*, 956 F.3d at 256.  Thus, the court declines to award costs and fees to the City.

III.  CONCLUSION

For the reasons set forth above, the court will grant the City's motion to remand and deny the PBMs' request for a stay pending conclusion of the appeal, but it will grant a 30-day stay consistent with Federal Rule of Civil Procedure 62(a).  The court will decline to award fees or costs to the City.  An appropriate order will be entered.

Entered: September 16, 2024.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge